<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|                          |     |                                    |
| ------------------------ | --- | ---------------------------------- |
| BANKWELL BANK,           | :   |                                    |
|                          | :   | **Civil Action No. 20-49 (SRC)**   |
| Plaintiff,               | :   |                                    |
|                          | :   |                                    |
| v.                       | :   | **OPINION & ORDER**                |
|                          | :   |                                    |
| BRAY ENTERTAINMENT, INC., et al., | :   |                                    |
|                          | :   |                                    |
| Defendants.              | :   |                                    |
|                          | :   |                                    |

---

<u>**CHESLER**</u>, <u>District Judge</u>

This matter comes before the Court on the motion to dismiss counts eleven through seventeen in the Fifth Amended Complaint by Defendants BiGMedia.ai, Inc. ("BiGMedia"), Christopher Bray, Bray Entertainment, Inc., Bray Films, Inc., Bray Media Limited Liability Company, Brayniac LLC, Mirayam M Solomon, and Vampire Post Inc. (collectively, "Bray.") Plaintiff Bankwell Bank ("Bankwell") has opposed the motion.  For the reasons expressed below, the Court will grant the motion to dismiss.

This case arises from a dispute between a lender, Bankwell, and a borrower, Bray.  The Fourth Amended Complaint ("AC4"), filed July 28, 2020, asserted fifteen claims.  Bray moved to dismiss five claims, four counts asserting fraudulent transfer, and one count alleging unjust enrichment.  On October 7, 2020, this Court granted that motion, dismissing the five claims at issue without prejudice, and allowing leave to replead the dismissed claims.  On November 3, 2020, Plaintiff filed the Fifth Amended Complaint ("AC5"), asserting seventeen claims.  In the AC5, Plaintiff reasserted the four fraudulent transfer claims and the unjust enrichment claim, and

added two claims based on new legal theories: 1) Count Sixteen ("BiGMedia's corporate veil should be pierced and its assets should be available to satisfy the debt of the Plaintiff," AC5 ¶ 172); and 2) Count Seventeen ("BiGMedia's assets should be made available to satisfy the debt to the Plaintiff" under an alter-ego theory, AC5 ¶¶ 183, 184.)

As to the four fraudulent transfer claims and the unjust enrichment claim, Defendants argue that the AC5 pleads no facts which can demonstrate that any transfer occurred. Defendants point out that the AC5 pleads only that BiGMedia applied for four trademark registrations, and does not plead facts to support the inference that the software associated with these trademarks was transferred.  Rather, the AC5 pleads: "In June, 2019, Defendant Bray caused Brayniac and Bray Entertainment to transfer the Software Products to BiGMedia as evidenced by the filing of the trademark applications in the name of BiGMedia."  (AC5 ¶ 141.) This assertion provides the sole factual foundation for the fraudulent transfer and unjust enrichment claims.

To meet the pleading requirements of Rule 8(a), a complaint must contain "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  This Court agrees with Defendants that the assertion that a new corporate entity registered the word trademark "RELEASEME," does not, alone, state sufficient facts to make plausible claims that a software product previously marketed by other Bray entities under the name "ReleaseMe" was fraudulently transferred.  The fraudulent

2

transfer claims and unjust enrichment claim do not plead sufficient facts to meet the federal pleading standard.

Furthermore, as to the fraudulent transfer claims only, Rule 9(b), which applies to claims sounding in fraud, sets a heightened requirement: the complaint must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The Third Circuit has held that to satisfy Rule 9(b)'s stringent standard, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

Bray argues, correctly, that the fraudulent transfer claims, Counts Eleven through Fourteen, fail to meet the particularity requirements of Rule 9(b).  The AC5 pleads the element of fraud in these claims in a conclusory fashion, and does not satisfy the Third Circuit's requirements for precision.   As to these counts, the motion to dismiss will be granted.

Plaintiff's opposition brief offers supplemental support for its claims in four exhibits to the brief, which the opposition brief references.  As Defendants contend in reply, federal courts generally must accept the factual allegations in the pleading as true, and may not test their truth by reference to evidence extrinsic to the pleading.  In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d 125, 133 (2016) ("a court considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may consider only the allegations contained in the pleading to determine its sufficiency.")  While it is true that in deciding a 12(b)(6) motion a Court may refer to extrinsic material of which it is permitted to take judicial notice, or material specifically relied upon, referenced, incorporated, or adopted in the Complaint, the Court cannot go beyond these specifically delineated limitations without converting the motion to dismiss to one for summary

judgment.  This Court has not considered these exhibits, nor the arguments referencing them, in deciding the motion to dismiss the claims at issue.

This Court has, however, considered this material as relevant to the question of whether Plaintiff should be allowed to replead Counts Eleven through Fifteen, or whether repleading is futile.  Neither party has raised the issue of whether leave to amend the AC5 should be granted, although Defendants ask this Court to dismiss the claims at issue with prejudice.  The Supreme Court has characterized dismissal with prejudice as a "harsh remedy."  New York v. Hill, 528 U.S. 110, 118 (2000).  Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile.  "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile."  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); see also Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 217 (3d Cir. 2013) ("It does not matter whether or not a plaintiff seeks leave to amend.")

This Court must therefore consider the question of whether Plaintiff should be granted leave to replead the dismissed claims, or whether amendment would be inequitable or futile.  Defendants have not argued that amendment would be inequitable or futile and, based on the briefs presently before this Court, this Court has no basis to conclude that it would be.  To the contrary, the arguments in, and exhibits attached to, Plaintiff's opposition brief suggest to this Court that repleading might not be futile.

While the Court can make no determination today about whether, after one last try at repleading, Plaintiff will succeed at pleading a fraudulent transfer claim that can withstand a

4

Rule 12(b)(6) motion, as well as satisfy the requirements of Rule 9(b), the Court is not prepared today to conclude that repleading is futile.  The Court observes the following elements: 1) the AC5 pleads that, in 2016, Plaintiff loaned $1,500,000.00 to various entities controlled by Defendant Chris Bray (AC5 ¶ 24); 2) the AC5 pleads that Plaintiff perfected a security interest in all personal property of Defendants Bray Entertainment, Bray Films, Brayniac, and Bray Media (AC5 ¶¶ 28, 33); 3) the AC5 pleads that, as security for a guarantee for the loan, Defendants Chris Bray and Mirayam Solomon granted a mortgage of the Palisade Street Property in favor of Plaintiff (AC5 ¶ 43); 4) the AC5 pleads that the Terms of Use Agreement, dated January, 2019, for the "ReleaseME" software product states both that Brayniac is the Bray entity which is the party to the Agreement (AC5 ¶ 50), and that Brayniac, under the trade name "BiG," owned or licensed all trademarks on the platform (AC5 ¶ 52); 5) the AC5 pleads that, on February 1, 2019, the Bray borrowers defaulted on Plaintiff's loan (AC5 ¶ 55); 6) the AC5 pleads that, in February of 2019, Plaintiff discovered that Defendant Chris Bray had sold the Palisade Street Property in violation of the mortgage and had failed to disclose this to Plaintiff (AC5 ¶ 56); 7) the proposals in Plaintiff's opposition brief exhibit C show an entity identified as "BiG" marketing software under the name "ReleaseME" to potential customers in March and April of 2019; and 8) in June, 2019, Bray registered the trademark "RELEASEME" with the USPTO in the name of BiGMedia.ai, Inc.  (AC5 ¶¶ 59, 64).  These factual allegations are easily sufficient to make plausible, generally, claims that Bray engaged in illegal transfers to avoid his obligations to Plaintiff.

The fraudulent transfer claims at issue focus on a specific item of property, the software known as "ReleaseME."  The threshold question, on this motion to dismiss these claims, was

whether the AC5 pleads facts that make plausible the claim that Bray engaged in illegal transfers of "ReleaseME" to avoid his obligations to Plaintiff.  As already stated, the Court has concluded that the claims do not meet the pleading requirements of <u>Twombly</u>, and the Court has turned to the question of futility.

In considering whether amendment is futile, the Court is not restricted to the well-pleaded factual allegations in the AC5.  It may consider things like the briefs of the parties, and their arguments.  Defendants' moving brief argues:

> These fraudulent transfer claims, and the additional claims arising out of these alleged transactions, all fail for one simple reason – there was never any actual transfer from any of the Bray Parties to BiGMedia of anything. The Software Products were never transferred to BiGMedia because, prior to creation by and for BiGMedia, they did not actually exist beyond an idea. Indeed, the Fifth Amended Complaint does not plead facts related to the creation and use of the Software Products, and is based only on conjecture and self-serving beliefs. BiGMedia created, filed, and received its own products and trademarks.

(Defs.' MTD Br. 1.)  This Court makes no prejudgment of what the evidence at trial will demonstrate, but notes only that, at the moment, Plaintiff contends that it has evidence that the "ReleaseME" software product did exist before BiGMedia.ai, Inc. was formed.  Defendants' arguments can thus be perceived as supporting an inference of an intent to conceal the existence of the "ReleaseME" asset to avoid the payment of the debt to Plaintiff.  This observation, together with all the other allegations which make plausible Bray's conveyance of property to avoid payment of debt, leads the Court to conclude that amendment of the fraudulent transfer claims is not futile.

As to the four fraudulent transfer claims, Counts Eleven through Fourteen, the Court finds that the AC5 fails to plead sufficient facts to meet the requirements of <u>Twombly</u> and Rule 9(b).  As to these claims, the motion to dismiss will be granted, and these claims will be

dismissed without prejudice.  Count Fifteen, for unjust enrichment, relies on much of the same factual foundation as the fraudulent transfer claims, thus suffering from some of the same problems as the fraudulent transfer claims, and the Court is similarly not prepared at this juncture to conclude that repleading is futile.  As to Count Fifteen, the motion to dismiss will be granted, and it will be dismissed without prejudice.  Plaintiff will be granted leave once more – and only once more – to replead Counts Eleven through Fifteen.  Plaintiff is granted leave to replead these claims within 30 days of the date of entry of this Opinion and Order.

Defendants also move to dismiss Counts Sixteen and Seventeen with prejudice, and the Court will grant the motion as to these two claims, for two reasons.  First, Counts Sixteen and Seventeen were not properly filed.  In the Opinion and Order dated October 7, 2020, this Court granted Defendants' motion to dismiss, dismissed Counts Eleven through Fifteen without prejudice, and granted Plaintiff leave to replead the dismissed claims.  Plaintiff neither sought leave to file additional claims, nor was such leave granted, but, when Plaintiff filed the Fifth Amended Complaint, it had two additional claims in it.  These claims were not properly filed.

Second, Defendants argue correctly that Counts Sixteen and Seventeen, relying on theories of corporate veil-piercing and liability under an alter-ego theory, are not supported by sufficient factual allegations to make them plausible.  The Court agrees and finds that these two claims are so far from having sufficient factual foundation in the AC5 that repleading them is indeed futile.

For both these reasons, as to Counts Sixteen and Seventeen, the motion to dismiss will be granted, and Counts Sixteen and Seventeen will be dismissed with prejudice.

While considering the instant motion, it came to the Court's attention that the AC5 fails to plead the factual basis for the assertion that Plaintiff is a citizen of the state of Connecticut; the AC5 states only that Plaintiff is a banking association with a principal place of business in Connecticut.  (AC5 ⁋ 2.)  The AC5 thus does not plead sufficient facts for this Court to conclude that, based on the citizenship of all parties, it has diversity jurisdiction over this case.  This Court is obliged to carry out "the duty of federal courts to examine their subject matter jurisdiction at all stages of the litigation sua sponte if the parties fail to raise the issue."  U.S. Express Lines, LTD. v. Higgins, 281 F.3d 383, 388-89 (3d Cir. 2002).  "If a case, over which the court lacks subject matter jurisdiction, was originally filed in federal court, it must be dismissed."  Ray v. Eyster (In re Orthopedic "Bone Screw" Prods. Liab. Litig.), 132 F.3d 152, 155 (3d Cir. 1997). Plaintiff shall show cause in writing before the undersigned by 30 days from the date of entry of this Opinion and Order why this action should not be dismissed for lack of federal subject matter jurisdiction; perhaps, however, the next iteration of the Amended Complaint will remedy this defect.

For these reasons,

**IT IS** on this 21st day of January, 2021

**ORDERED** that, as to counts eleven through fifteen in the Fifth Amended Complaint, Defendants' motion to dismiss (Docket Entry No. 69) is **GRANTED**, and counts eleven through fifteen in the Fifth Amended Complaint are hereby **DISMISSED** without prejudice; and it is further

**ORDERED** that Plaintiff is granted leave to amend counts eleven through fifteen within 30 days of the date of entry of this Opinion and Order; and it is further

**ORDERED** that, as to counts sixteen and seventeen in the Fifth Amended Complaint, Defendants' motion to dismiss (Docket Entry No. 69) is **GRANTED**, and counts sixteen and seventeen in the Fifth Amended Complaint are hereby **DISMISSED** with prejudice; and it is further

**ORDERED** that Plaintiff shall show cause in writing before the undersigned by 30 days from the date of entry of this Opinion and Order why this action should not be dismissed for lack of federal subject matter jurisdiction.

    s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

9